UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL ALBERT NEWMAN,

         Plaintiff,

vs.

TOWNSHIP OF HAMBURG, ET AL.,

         Defendants.

_____ /

No. 12-10258

District Judge Arthur J. Tarnow

Magistrate Judge R. Steven Whalen

## REPORT AND RECOMMENDATION

On January 1, 2012, Plaintiff Daniel Albert Newman filed a civil complaint raising constitutional and state law claims arising out of his arrest, prosecution, and conviction for second degree murder, a conviction that was ultimately vacated in an unconditional writ of habeas corpus issued by this Court.  The Defendants are the Township of Hamburg, Michigan and two of its police officers, Eric Calhoun and Patrick DeBottis.  Before the Court is Defendants' Motion to Dismiss and/or Motion for Summary Judgment [Doc. #21], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons discussed below, I recommend that the motion be GRANTED.

### I.   FACTS

Plaintiff Daniel Albert Newman was convicted in the Livingston County Circuit Court of second-degree murder in connection with the death of Harry Chappelear on

February 28, 1992.  He was sentenced to 40 to 80 years imprisonment. Following a direct appeal and state collateral proceedings, a grant of habeas corpus in *Newman v. Metrish*, 492 F.Supp.2d 721 (E.D. Mich. 2007), and affirmance by the Sixth Circuit in *Newman v. Metrish*, 543 F.3d 793 (6th Cir. 2008), this Court granted a final, unconditional writ of habeas corpus on March 16, 2009 in *Newman v. Metrish*, E.D. Mich. No. 04-74582, 2009 WL 736820 (E.D. Mich., 3-16-09)(Tarnow, J). The writ was granted on the basis that there was legally insufficient evidence to support a conviction of guilt beyond a reasonable doubt.  The facts brought out at the criminal trial were comprehensively set forth in this Court's initial June 15, 2007 Opinion and Order Granting the Petition for Writ of Habeas Corpus.[1]

Defendants Calhoun and DeBottis were the Hamburg Township Police Officers who investigated the Chappelear homicide.  Plaintiff alleges that on February 9 and March 1, 1992, they interviewed one Jamie Stoll, and that Stoll denied knowing anything about the murder.  However, says Plaintiff, Stoll subsequently failed a polygraph examination in which he was asked whether he murdered Chappelear, and whether he was present or planned the murder. *Complaint*, ¶ 13.[2]  Plaintiff also alleges that during the

---

[1] That Opinion and Order is appended to Defendants' motion as Exhibit B and to Plaintiff's response [Doc. # 22] as Exhibit 1.

[2] The report of the Stoll's polygraph examination is attached to Plaintiff's response [Doc. #22] as Exhibit 6. Stoll answered "no" to each of the following questions: "(1) Do you know for sure who shot Harry? (2) Did you shoot Harry? (3) when Harry was shot were you there? (4) Did you plan with anyone to shoot Harry? (5) Concerning Harry's death are you telling me any deliberate lies?"  The examiner concluded, "It is the opinion

interview, these Officers "reached over and grabbed a chunk of Stoll's hair out of his head, without his consent or a search warrant, and said they were going to analyze it for DNA." *Id.* ¶ 14.

Plaintiff alleges that on March 6, 1992, Calhoun and DeBottis interviewed Ben Masters, Sr., a neighbor of Chappelear, and that Masters told them that "on February 27 or 28, 1992," he spotted a black Blazer, driven by two or more white males in their twenties with light brown hair, leaving the area of Ogemaw Road and Cordley Lake Road. Master said that "that day or the next day," he heard gunshots coming from the area where he had observed the Blazer. *Id.* ¶ 16. The area where he saw the Blazer and heard the shots was about 75 feet from Chappalear's residence. *Id* ¶ 17.

Plaintiff alleges that on March 18, 1992, Defendant Calhoun presented an affidavit for a search warrant for Gary Kulpa's black SUV and hair samples from Gary Kulpa, as well as for a search warrant for Plaintiff's person and house. Plaintiff alleges that "on information and belief," the same affidavit was used to support the request for the warrant for his arrest. *Id.* ¶ 22. Plaintiff alleges that Calhoun's affidavit represented Masters' statement as being "that on or about 5:00 p.m. on February 27, 1992," he observed the black SUV on Cordley Lake Road. Plaintiff alleges that "[t]he affidavit plainly misrepresented Ben Masters, Sr.'s statement about the encounter with the dark SUV. In fact Mr. Masters Sr. Stated that "*unknown if (sic) was 2-27-92 or 2-28-92 what time he*

---

of the undersigned examiner based upon the examination conducted, that the above listed subject is not truthful regarding the issue."

*was getting ready to go to the party store*." *Id.* ¶ 23 (emphasis in original).

Plaintiff states that at the time of his arrest, the Defendants knew the following information:

A.  That Plaintiff's shoe size did not match that of the shoe found in the blue gym bag that the police obtained;

B.  The Plaintiff's physical description did not match that of the person reported to have been wearing the blue jacket. (The police had received information from an unknown female caller about that individual having been seen talking to Chappelear at a bowling alley around Thanksgiving of 1991);

C.  There was no physical evidence linking Plaintiff to the murder;

D.  There were no eyewitnesses to the murder;

E.  Jamie Stoll failed a polygraph regarding his involvement in the murder;

F.  No witnesses observed Plaintiff in possession of the Ruger 9mm handgun shortly before or after the murder;

G.  No witnesses placed Plaintiff near the scene of the murder shortly before or after the murder.  *Id.* ¶ 26.

Defendant Calhoun testified at his deposition that in this case, he worked very closely with the elected prosecutor, David Morse. He stated, "I have never worked more closely with a prosecutor on any case than I did on this case.  We went through every step of this step by step, fact by fact, document by document with David Morse personally." *Defendants' Exhibit J, Calhoun Deposition*, 35.  The prosecutor's office drafted the affidavit in support of the search warrant. *Id.* 34.  He said that he was present at least two times when Jamie Stoll was interviewed, and that he was aware that Stoll failed a

-4-

polygraph examination.  He said, "I thought [Stoll] could have knowledge of the homicide.  He may have known who had done it, he may have a greater role that what we are aware of." *Id*. 50-52.  Calhoun testified that after Stoll failed the polygraph, he (Calhoun) cleared up some inconsistencies in Stoll's statements, and "felt confident that he was not involved directly with the homicide, but whether or no he had more information than he was sharing with me, again to this day I don't–I am uncertain." *Id*. 53-56.

Calhoun testified that he was present when Stoll was interviewed at the State Police Post, but neither Trooper Cremonte nor anyone else pulled hair from Stoll's head. *Id*. 55-56.  Calhoun stated that he "absolutely" informed Prosecutor Morse that Stoll had failed a polygraph and had given inconsistent statements. *Id*. 57.

As to the distinction between DeBottis' notes of his interview with Ben Masters, which indicates that Masters was not sure if he saw the SUV on February 27th or 28th, and the statement in Calhoun's search warrant affidavit that Master saw the SUV "on or about February 27th," Calhoun testified that whatever DeBottis may have recalled about the Masters interview, "My contemporaneous memorialization of my recollection of that interview is contained in this affidavit.  I believe this to be true and accurate.  I believe he had a more definitive time from Mr. Masters, Sr." *Id*. 65-66, 68.  He said that Prosecutor Morse told him that "the appropriate language to use was on or about February 27th of 1992...." *Id*. 66.

Defendant DeBottis testified at his deposition that when he interviewed Ben

Masters, Sr., Masters said that he was unsure whether he had seen the SUV on February 27th or 28th. *DeBottis Deposition, Plaintiff's Exhibit 9 [Doc. #22]*, 27. He testified that Calhoun also spoke with Masters, but that he (DeBottis) wrote his report based on what he recalled Masters saying. He testified, "I don't know what Mr. Calhoun heard. I wrote this report based on what Mr. Masters said." *Id*. 28-29. DeBottis testified that he did not observe anyone touch or pull Jamie Stoll's hair during his interview at the State Police Post. *Id*. 30-31. DeBottis stated that Calhoun was the affiant on all of the search warrants in the case, as well as the arrest warrant for Plaintiff. *Id.* 32. He said that he was not aware of any additional information that was obtained between the request for the search warrant and the request for the arrest warrant. *Id*. 34-35. The fact that the weapon used to kill Chappelear was traced to Plaintiff was in both affidavits. *Id*.

Plaintiff testified at his deposition that he was released from prison on October 29, 2008. *Plaintiff's Deposition*, *Defendants' Exhibit I*, 8. He stated that in 2010, he was focused on how he could get Jamie Stoll to "give him the information that the police suppressed" from him. *Id*.49. He brought Stoll to his attorney's office to give a statement. *Id*. 73. He conceded that Stoll had said under oath that neither Calhoun nor DeBottis took the hair from him, and did not know whether the prosecutor was aware that a hair sample had been secured from Stoll. *Id*. 50. Plaintiff asked Stoll if he killed Harry Chappelear, and Stoll said he had not. Nor did Stoll ever tell Plaintiff that he knew who the killer was. *Id*. 72-73.

James ("Jamie") Stoll was questioned under oath at Plaintiff's lawyer's office on

September 15, 2011. The transcript is contained at Plaintiff's Exhibit 5. He stated that the police picked him up with regard to the Chappelear murder and took him to a State Police Post, where he was interrogated and given a polygraph exam. He was told that he failed the polygraph. *Stoll Transcript*, 3-6. He said that on a second day of being interviewed at the State Police Post, someone "snatched" his hair, but it was not Calhoun or DeBottis. *Id*. 9-10.

In Count I of the complaint, Plaintiff claims that Defendants violated the Fourth Amendment and Fourteenth Amendment due process by failing to disclose to either prosecutors or defense counsel exculpatory and impeachment evidence, including the hair sample taken from Jamie Stoll. Plaintiff also alleges in Count I that Calhoun and DeBottis "deliberately and knowingly supplied false information...in requesting an arrest warrant which was material to a finding of probable cause." *Id*. ¶ 16. He claims that Defendant Township of Hamburg "created policies, practices and customs, including a failure to provide adequate training to its police officers, including Defendants, Calhoun and DeBottis, regarding the police department's constitutional obligation to turn over apparent exculpatory and impeachment evidence to the prosecutors...." *Id.* Finally, in Count I, Plaintiff makes a claim of malicious prosecution, "in violation of the Fourth Amendment," against Defendant Calhoun, alleging that Calhoun participated in the decision to prosecute the Plaintiff in the absence of probable cause.

In Count II, Plaintiff brings a claim of common law malicious prosecution against Defendant Calhoun.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c).  To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celetox Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate.  *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the

movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6ᵗʰ Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If, after sufficient opportunity for discovery, the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

## III.    DISCUSSION

### A.    Statute of Limitations

The statute of limitations for a claim arising in Michigan under 42 U.S.C. § 1983 is three years. *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 543 (6ᵗʰ Cir. 2004). In § 1983 claims based on malicious prosecution, the statute does not begin to run until does the criminal proceeding is terminated in favor of the plaintiff. See *Heck v. Humphrey*, 512 U.S. 477, 486-90 (1994); *Dunn v. Tennessee*, 697 F.2d 121, 127 (6th Cir.1982).

The statute of limitations for a claim of malicious prosecution under Michigan law is two years. M.C.L. § 600.5805(5), which runs from the "[t]ermination of the underlying criminal proceedings in the plaintiff's favor...." *Bebhardt v. O'Rourke*, 444 Mich. 535, 510 N.W.2d 900, 907 (1994).

Defendants argue that the statute of limitations for all of Plaintiff's claim began to run on October 29, 2008, when he was released from prison, following the Sixth Circuit's decision affirming the initial grant of a writ of habeas corpus. However, notwithstanding

dicta contained in *Spencer v. Kemna*, 523 U.S. 1 (1998), as well as dicta discussing

*Spencer* in a footnote in *Shamaeizadh v. Cunigan*, 182 F.3d 391, 396, fn. 3 (6ᵗʰ Cir.

1999)[3], the Supreme Court in *Heck* held that "a § 1983 cause of action for damages

attributable to an unconstitutional conviction or sentence does not accrue until the

conviction or sentence has been invalidated." *Heck*, 512 U.S. at 489-90.  An order

invalidating a conviction–including the grant of a writ of habeas corpus–does not become

"final" until the time for appeal has expired, that is, the conviction has been invalidated

"once and for all."  In *Cristini v. City of Warren*, 2012 WL 5508369, *18  (E.D.Mich.

2012)(Lawson, J.), the court explained as follows:

> "*Heck* makes clear that a plaintiff cannot assert all the elements of a claim
> based on an unconstitutional conviction or sentence until that conviction
> *has been invalidated somehow once and for all.* The trial court's order
> vacating the plaintiff's conviction and granting him a new trial certainly
> satisfies that requirement, but *that order did not become final until the time
> for a prosecution appeal expired*. Cf. *Gonzalez v. Thaler*, ——U.S. ——,
> ——, 132 S.Ct. 641, 653, 181 L.Ed.2d 619 (2012) (citing *Clay v. United
> States,* 537 U.S. 522, 527, 123 S.Ct. 1072, 155 L.Ed.2d 88 (2003), *and
> Jimenez v. Quarterman*, 555 U.S. 113, 120–21, 129 S.Ct. 681, 172 L.Ed.2d
> 475 (2009)). *Until that time, the conviction was subject to reinstatement by
> the Michigan courts, and Heck's bar had not been extinguished.*" (Emphasis
> added).

Judge Tarnow initially granted a writ of habeas corpus on June 15, 2007. The State

appealed to the Sixth Circuit, which affirmed the lower court decision in a 2-1 decision.

On remand, Judge Tarnow entered an unconditional writ of habeas corpus on March 16,

---

[3] *Spencer* was a habeas case, not a § 1983 case.

2009. The State again appealed unsuccessfully, and the Supreme Court denied certiorari on January 19, 2010. *See Plaintiff's Exhibit* 4.  Under the *Cristini* analysis, it was on that date that the claims accrued.  The complaint in the present case was filed on January 19, 2012.  This was well within the three-year statute of limitations for Plaintiff's § 1983 claims, and just under the wire for his state law malicious prosecution claim.  Dismissal is not warranted based on the statute of limitations.

### B.    *Brady* Violation

Plaintiff claims that Defendants Calhoun and DeBottis violated their duty to disclose exculpatory evidence to the prosecution and to defense counsel in the criminal case.  In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."   In *Strickler v. Greene*, 527 U.S. 263, 281–82, (1999), the Supreme Court articulated three essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir.2002).  In *Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009), the Sixth Circuit held that the "due process guarantees recognized in Brady also impose an

analogous or derivative obligation on the police."[4]

The evidence at issue in this case was the information that Jamie Stoll was a suspect, shown by the fact that he failed a polygraph information regarding his role in or knowledge of the homicide, and the police obtained a hair sample from him. First, and most importantly, Plaintiff's claim fails on the second prong of the second prong of the *Strickler* formulation: there is no evidentiary showing that the Defendant Officers concealed the polygraph results from the prosecutor. Calhoun testified that he in fact informed Prosecutor Morse about Stoll's failed polygraph, as well as every other piece of evidence he was aware of. Plaintiff has not offered any evidence to rebut Calhoun's testimony, nor has he provided any proof that either Calhoun or DeBottis kept the prosecutor in the dark about Stoll's polygraph. It bears repeating that the non-moving party in a summary judgment motion may not merely "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, *supra*, 886 F.2d at 1479. Because Plaintiff has not affirmatively shown, beyond speculation or belief, that either Calhoun or DeBottis withheld crucial information from the prosecutor, summary

---

[4] The Court in *Moldowan* also noted that "virtually every other circuit has concluded either that the police share in the state's obligations under Brady, or that the Constitution imposes on the police obligations analogous to those recognized in Brady...." *Id*.

judgment on the *Brady* claim is appropriate.[5]

As to the hair sample allegedly taken from Stoll, Plaintiff does not claim, nor has any evidence been offered, to show that any forensic testing was performed on Stoll's hair. Rather, the import of the seizure of Stoll's hair, according to Plaintiff, is that it shows that Stoll was considered a suspect in the homicide. But of course that was already apparent from the fact that he had been interrogated and had failed a polygraph. Thus, whether or not hair was taken from Stoll–and Calhoun and DeBottis say it was not–is inconsequential. Under the third prong of *Strickler*, there would have been no prejudice.

The evidence that Calhoun and DeBottis turned over all material evidence to the prosecutor is unrebutted. If criminal trial counsel was not provided with Stoll's polygraph results, Plaintiff's fight is with Prosecutor Morse–a non-party– not with these Defendants.

Finally, it follows from the above discussion that since there was no police suppression of exculpatory evidence, the claim against Hamburg Township for failure to train its officers as to the requirement of *Brady* must be dismissed as well.

### C.    Malicious Prosecution

In Count I, Plaintiff brings a claim of malicious prosecution against Defendant Calhoun under 42 U.S.C. § 1983 and the Fourth Amendment. In Count II, he claims malicious prosecution under Michigan law. While having some elements in common, the

---

[5] Because Plaintiff has failed to support his claim that there was police suppression of exculpatory evidence, it is not necessary to address the first and third prongs of *Strickler*.

two claims are distinct.

The elements of malicious prosecution under the Fourth Amendment are as follows: (1) The defendant "ma[d]e, influence[d], or participate[d] in the decision to" initiate criminal prosecution against the plaintiff; (2) There was no probable cause; (3) Plaintiff suffered a " 'deprivation of liberty' ... apart from the initial seizure" as a consequence of the prosecution; and (4) The criminal prosecution was resolved in the plaintiff's favor.  *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir.2010).

To establish a claim of malicious prosecution under Michigan law, a plaintiff "must prove: 1. Prior proceedings terminated in favor of the present plaintiff; 2. Absence of probable cause for those proceedings; 3. Malice, defined as a purpose other than that of securing the proper adjudication of the claim; and 4. A special injury that flows directly from the prior proceedings." *Payton v. City of Detroit*, 211 Mich.App. 375, 536 N.W.2d 233, 242 (1995) (citing *Young v. Motor City Apartments Ltd.*, 133 Mich.App. 671, 350 N.W.2d 790, 792 (1984)).

### 1.    State Law Claim

With the grant of an unconditional writ of habeas corpus, culminating in the Supreme Court's denial of certiorari, the criminal proceedings were terminated in Plaintiff's favor, hence, the first element is met.

Calhoun argues that the prosecution was supported by probable cause, and thus Plaintiff's claim falters on the second element. "In general, the existence of probable

-14-

cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Pyles v. Raisor*, 60 F.3d 1211, 115 (6th Cir. 1995). Given that this element overlaps in a common law malicious prosecution claim, that general rule would apply with equal force in this state law claim.

Probable cause exists when the "facts and circumstances within the officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.' " *Michigan v. DeFillippo*, 443 U.S. 31, 37, (1979). In this case, there is clearly a question of fact as to whether there was probable cause to charge the Plaintiff.  In its June 5, 2007 opinion granting a writ of habeas corpus on grounds of insufficient evidence, this Court said that the evidence possibly supported only a "reasonable speculation" that Plaintiff participated in the murder, and characterized it as "mere suspicion." *Defendants' Exhibit B*, p. 12.  Likewise, the Sixth Circuit stated that there was only a "reasonable speculation" that Plaintiff was present at the time Chappelear was shot. *Defendants' Exhibit E*, p. 5.  "Reasonable speculation" may support an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), but it does not rise to the more demanding level of probable cause.  *See Qualls v. Parrish*, 534 F.2d 690, 693 (6th Cir. 1978)(declining to decide whether there was probable cause, but finding there was "reasonable speculation" to support a *Terry* stop); *United States v. Diaz-Garcia*,  808 F.Supp. 784, 790 (S.D.Fla. 1992)(transforming probable cause requirement into "something akin to reasonable speculation...would allow for unjustified and unreasonable

searches....”).

To be sure, this Court and the Sixth Circuit in Plaintiff's habeas case were assessing the legal sufficiency of the evidence under the reasonable doubt standard, not the issue of probable cause, and I do not suggest that these comments on the paucity of evidence are binding in this case, or that they fall within the doctrine of collateral estoppel. What I do suggest is that the evidence against Plaintiff was appallingly weak and circumstantial, and if these judges felt constrained to characterize it in such a way as to question whether it might even meet the probable cause standard, then I would be hard pressed to say that a rational jury could not find in Plaintiff's favor on the issue of probable cause.

The fourth element is met, in that Plaintiff suffered an injury as a result of the conviction.  However, it is on the third element–malice–that the state malicious prosecution claim fails.

Again, malice is defined as “a purpose other than that of securing the proper adjudication of the claim.” *Payton v. City of Detroit*, *supra*.  A jury might find that Calhoun, as well as the prosecutor, got it wrong in determining that there was probable cause to charge the Plaintiff, but then so did the trial judge and the Michigan Court of Appeals judges, who found that there was not only probable cause, but evidence sufficient to support a finding of guilt beyond a reasonable doubt. Likewise with the Michigan Supreme Court Justices who denied leave to appeal, and with Sixth Circuit Judge Sutton, who dissented from the majority opinion affirming the grant of the writ.

Reasonable jurists, learned in the law, believed that the evidence was sufficient to support the conviction.  Are we to hold a police officer to a higher standard? There is no evidence that Calhoun, in consultation with the prosecutor, made his probable cause determination–however erroneously–out of any malicious motivation or for any reason other than "securing the proper adjudication" of the homicide case he was investigating.[6]

### 2.    Fourth Amendment Malicious Prosecution

Under *Sykes v. Anderson*, Plaintiff has established, at a minimum, questions of material fact as to all four elements of a Fourth Amendment Malicious Prosecution claim: Calhoun participated in the decision to initiate a criminal prosecution against Plaintiff; as discussed above, there is a question of fact as to whether the prosecution was supported by probable cause; Plaintiff clearly suffered a deprivation of liberty; and the prosecution was ultimately resolved in Plaintiff's favor.  Unlike the common law malicious prosecution claim, malice is not required.

Nevertheless, this claim must be dismissed because Calhoun is entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"

---

[6] For the same reason, Calhoun would be entitled to governmental immunity on the state claim under *Odom v. Wayne County*, 482 Mich. 459, 760 N.W.2d 217 (2008), which states that such immunity covers even intentional torts as long as the officer acts during the course of employment, within the scope of his authority, and his acts are undertaken in good faith.

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, ―― U.S. ――, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011) (internal quotation marks omitted).

There are two fundamental inquiries in a qualified immunity analysis: (1) did the defendant violate a constitutional right, and (2) was the right clearly established to the extent that a reasonable person in the defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz,* 533 U.S. 194, 121 (2001). More recently, the Supreme Court reconsidered the sequential inquiry set forth in *Saucier,* concluding that "while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory." *Pearson v. Callahan,* 555 U.S. 223 (2009). In *Williams v. Mehra* 186 F.3d 685, 691 (6th Cir. 1999), the Sixth Circuit stated a third inquiry:

> "[F]inally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Dickerson v. McClellan*, 101 F.3d 1151, 1157–58 (6th Cir.1996)."

As discussed above, there is at least a question of fact as to whether Plaintiff suffered a Fourth Amendment violation, that is, a malicious prosecution not based on probable cause. However, there is a question as to whether this specific Fourth Amendment right was clearly established in 1992. In *Spurlock v. Satterfield*, 167 F.3d 995, 1005–07 (6th Cir.1999), the Sixth Circuit found that malicious prosecution without

-18-

probable cause violates rights clearly established under the Fourth Amendment, citing *Albright v. Oliver*, 510 U.S. 266 (1994). Plaintiff has cited no pre-*Albright* cases that clearly establish a malicious prosecution claim as a Fourth Amendment violation prior to 1994. On the other hand, the Fourth Amendment itself, which dates to 1789, requires that no warrants issue except on probable cause.

But even assuming that Calhoun violated a clearly established constitutional right, he is entitled to qualified immunity on the third prong described in *Mehra*–his actions were not objectively unreasonable. I again point out that three Michigan Court of Appeals judges, seven Michigan Supreme Court Justices, and one Sixth Circuit judge found that the evidence constituted proof beyond a reasonable doubt. So far, 11 judges got it wrong and three judges got it right. Unless we hold Calhoun to an impossible standard of legal prescience, we must conclude that at worst, he made "a reasonable but mistaken judgment." *Ashcroft v. al-Kidd, supra*.

Finally, what about the discrepancy between Calhoun's affidavit indicating that Masters said he saw the black SUV "on or about" February 27th, and DeBottis' report indicating that Masters was unsure whether it was February 27th or 28th? Plaintiff claims that Calhoun provided materially false information to the judge that contaminated the probable cause finding. Calhoun's affidavit is six pages in length, with 26 paragraphs. Most of the affidavit has nothing to do with Masters, but it does include information that Masters described the occupants of the SUV as "two white male occupants in their 20's with both having light brown hair." The affidavit also indicates that Plaintiff has brown

hair. If the time stated in the affidavit is correct, then the SUV was in the area of Chappelear's house some seven or eight hours before the homicide. If the true date of Masters' observation was February 28th at 5:00 p.m, this would have been after the homicide. Chappelear was killed shortly after midnight of February 28. Interestingly, Calhoun's affidavit states that Chappelear was killed on February 28th, but does not indicate the time of death. Thus, the affidavit would have been no less inculpatory if the February 28th date had been ascribed to Masters' statement.

The affidavit also focuses on Gary Kulpa, who also has brown hair, and who was associated with a car similar to the one described by Masters. So Masters' statement tends to be more inculpatory toward Kulpa than Plaintiff. But the affidavit also shows that Plaintiff owned the murder weapon, a 9mm handgun, a fact that would seem considerably more damning than a general description of someone with brown hair. In other words, the information concerning Masters' observations likely did not play a significant role in the judge's probable cause determination. Indeed, this Court and the Sixth Circuit have held that even with Calhoun's statement regarding Masters, there was no probable cause to issue the warrant. Masters' statement, as recounted by Calhoun, added nothing to support probable cause, and therefore its inclusion in the warrant request cannot form the basis of Plaintiff's malicious prosecution claim.

## IV.   CONCLUSION

For these reasons, I recommend that Defendants' Motion to Dismiss and/or Motion for Summary Judgment [Doc. #21] be GRANTED.

-20-

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: March 3, 2014                         s/R. Steven Whalen
                                             R. STEVEN WHALEN
                                             UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on March 3, 2014, electronically and/or by U.S. Mail.

s/R. Steven Whalen
Case Manager for the
Honorable R. Steven Whalen